JOHN B. HOOD CAMP, CONFEDERATE VETERANS, v. S. D. DE CORDOVA.

No. 691. Decided October 27, 1898.

**1. Execution Sale—Trust—Equity.**

A purchaser at execution sale of land which the defendant in execution holds in trust for another, acquires no title if he has notice of the trust at the time of purchase, though the judgment creditor may, without notice of the equity, have fixed a lien upon the land in any of the modes provided by statute.   (P. 206.)

**2. Same.**

The same rule applies though the trustee has previously conveyed the legal title to the cestui que trust by a deed void as against the purchaser at execution sale because unrecorded; as to such purchaser the unrecorded deed can not be held void as a conveyance of title and at the same time effective in extinguishing the equity. (Pp. 206, 207.)

**3. Same—Cases Criticised.**

Calvert v. Roche, 59 Texas, 463, and Gaines v. Bank, 64 Texas, 18, criticised, and Blankenship v. Douglas, 26 Texas, 225, followed.   (Pp. 206, 207.)

**4. Execution—Sale of Land—What Passes.**

The right to receive back from the State money paid for the purchase of land under the "Scrap Act" upon discovery of the fact that such land was not vacant, does not pass by sale and purchase of the land itself under execution against the person paying such money in the attempt to purchase from the State.   (P. 207.)

QUESTIONS CERTIFIED from the Court of Civil Appeals for the Third District, in an appeal from Travis County.

*D. W.* and *D. H. Doom,* for appellant.—The court erred in excluding from the jury all the evidence offered by defendant, said evidence being relevant and material to show that defendant had acquired a valid judgment lien upon the said 400.9 acres of land in Harris County, Texas, against John W. Maxcy, and that the same had been duly sold under execution as the property of the said John W. Maxcy, and purchased by defendant, before the sale of the said tract of land to the said John W. Maxcy by the State had been canceled, without any notice, actual or constructive, of the claim of plaintiff to the said tract of land.   Renick v. Dawson, 55 Texas, 102; Hines v. Thorn, 57 Texas, 98; Robertson v. Du Bose, 76 Texas, 1; Abernathy v. Stone, 81 Texas, 430; McWilliams v. Withington, 7 Fed. Rep., 326; Bruce v. Nicholson, 109 N. C., 202; McMullen v. Wenner, 16 Am. Dec., 543; Olander v. Tighe, 61 N. W. Rep., 633.

The evidence of plaintiff did not show a resulting trust in plaintiff in the 400.9 acres of land nor in the $801.80 purchase money, but tended to show an express trust by agreement, and plaintiff having neglected to have his lien by agreement put in writing and of record in the county where the land was situated, could not claim against defendant's judgment lien which had been fixed on the land without notice of plaintiff's lien, by giving notice thereof for the first time when the property was about to be sold under execution.   Parker v. Coop, 60 Texas, 111; Brotherton v. Weathersby, 73 Texas, 471; Russell v. Nall, 2 Texas Civ. App., 60, 23 S. W. Rep., 901; Grace v. Wade, 45 Texas, 522; Bispham's ,Prin. of Eq., 5 ed., p. 136; Perry on Trusts, 4 ed., sec. 133; Snyder v. Wolford, 22 N. W. Rep., 254.

*Ward & James,* for appellee.—Where one has paid money into the State Treasury for the purchase of public land, and it is afterwards discovered that such land can not be patented to the purchaser because of the fact that such land does not actually exist, a sale under execution of the right, title, and interest of the party who applied to purchase same from the State and who paid the money into the treasury will not pass any title to the money paid into the treasury to the purchaser at such execution sale.   Acts 25th Leg., Spec. Sess., p. 19; DePoyster v. Baker, 89 Texas, 155; Glover v. United States, 164 U. S., 294.

A creditor claiming a mere statutory lien by the record of his judgment or levy of his execution against the person in whom the apparent legal title is vested is not protected by reason of this lien against a resulting trust in favor of another, and a purchaser of the property at the subsequent execution sale will take nothing as against the holder of such an equity if he have notice of the same before making such purchase.   2 Sayles' Real Estate Laws, 768; Tied. on Real Prop., sec. 842.

GAINES, Chief Justice.—The Court of Civil Appeals for the Third Supreme Judicial District has certified for our determination the following question:

"The subject matter of this suit is $801.80, heretofore paid into the State Treasury by John W. Maxcy. Judgment was rendered for the plaintiff, De Cordova, and the defendant, John B. Hood Camp, Confederate Veterans, has appealed; and the Court of Civil Appeals for the Third District, desiring to certify a question to the Supreme Court for decision, the following statement is made explanatory of said question:

"1. By agreement of the parties, the money in controversy was withdrawn from the State Treasury and deposited with the clerk of the District Court of Travis County, in which court this suit originated.

"2. On the 21st day of June, 1894, John W. Maxcy was in the employ of appellee, S. D. De Cordova, as a surveyor, and finding what he supposed to be 400.9 acres of vacant land in Harris County, he made application in his own name and in due form to purchase the same under the scrap act. In so doing, he was acting for De Cordova and made the application for the latter's benefit. He reported to De Cordova that he had found this vacant land and had made application to purchase it for the benefit of De Cordova. De Cordova then agreed to furnish all the money to pay for the land and pay all the expenses incurred in securing it; and when the land was sold, De Cordova was to be refunded his money with legal interest thereon, and the balance was to be divided between him and Maxcy. And if the land was not patented, De Cordova, if the State would refund it, was to have his money back. De Cordova furnished the money to Maxcy, and on January 16, 1895, Maxcy paid to the State Treasurer the sum of $801.80 in full payment of the 400.9 acres of land, and the treasurer receipted Maxcy therefor, said payment being made and receipt issued in the name of John W. Maxcy for himself and not as agent for any one.

"3. On January 25, 1895, John W. Maxcy executed a deed conveying said 400.9 acres of land to S. D. De Cordova, which was, on the same day, duly acknowledged and has been filed in the Land Office.

"4. It was subsequently ascertained that the 400.9 acres of land referred to was in conflict with older surveys and was not in fact vacant land; and on the 16th day of March, 1897, the Commissioner of the General Land Office canceled the survey and sale of said 400.9 acres to John W. Maxcy, because the same was not vacant land, and authorized the Treasurer to return the purchase money to the person entitled thereto, stating that the same was claimed by both parties to this suit.

"5. On the 19th day of July, 1897, John W. Maxcy, for a recited consideration of $1 and other valuable considerations, transferred and set over to appellee S. D. De Cordova the said sum of $801.80, which had been deposited with the treasurer and paid to the State of Texas on account of the purchase price of said 400.9 acres of land, which transfer was duly acknowledged on same day.

"6. It was shown that said 400.9 acres of land was, on the 4th day of August, 1896, sold under execution in favor of the John B. Hood Camp, Confederate Veterans, and that S. D. De Cordova gave notice in writing at the time of the sale that the land in question was not the property

of John W. Maxcy, the defendant in execution, and had never been his property, but was the property of said De Cordova, and was paid for with his money.

"7.   Appellant offered in evidence and the court below held to be irrelevant and excluded the following testimony:

"(1.)   Certified copy of application of John W. Maxcy for the purchase of 400.9 acres of land in Harris County, Texas, with indorsements thereon showing the application made June 21, 1894, to the county surveyor of Harris County, filed in the General Land Office on the 29th day of October, 1894. in file No. 359, Harris scrip, John W. Maxcy.

"(2.)   Certified copy of the field notes of the 400.9 acres of land, with indorsements thereon showing the survey of the land made September 16, 1894, and duly certified and recorded in the surveyor's office in Harris County, Texas, and filed in the General Land Office on the 29th day of October, 1894, in the same file with the application.

"(3.)   Certified copy of a map of the location of the said survey accompanying the said field notes, with indorsements thereon.

"(4.)   Certified copy of affidavit of S. D. De Cordova, with indorsements thereon, showing affidavit made on the 16th day of January, 1895, by S. D. De Cordova and filed in the General Land Office in the same file with the said application and field notes, in which De Cordova makes affidavit that he is the owner of an 800-acre subdivision out of the John Brown league in Harris County, as shown on the sketch; that his deed called for 800 acres out of the northeast corner of the Brown survey, and that he made no claim whatsoever to any land lying to the east of the said 800 acres, and the sketch shows that the 400.9 acres in controversy lies to the east of the said 800 acres of land.

"(5.)   Evidence to show that on the 1st day of December, A. D. 1894, defendant recovered judgment against John W. Maxcy, Charles A. Newning, and Charity L. Newning for the sum of twenty-two hundred and four and 9-100 dollars, with interest thereon from that date at the rate of 8 per cent per annum, and for costs, thirty-five and 85-100 dollars, in cause No. 11,090, John B. Hood Camp, Confederate Veterans, v. John W. Maxcy et al., in the District Court of Travis County, Texas; that thereafter on, to wit, the 26th day of December, A. D. 1894, an abstract of said judgment was duly filed, recorded, and indexed in the county of Harris, in the State of Texas, where the said 400.9 acres of land was situated; and that afterwards, by virtue of an execution duly issued on said judgment to Harris County, Texas, the said property was sold as the property of the said John W. Maxcy, on, to wit, the 4th day of August, A. D. 1896, and purchased by said defendant and the firm of Jones & Garnett, in the proportion of nine-tenths to said defendant and one-tenth to the said Jones & Garnett, and conveyed by the sheriff of said Harris County by deed to defendant and said Jones & Garnett in the same proportion; and that the interest of the said Jones & Garnett had been conveyed to defendant; and that execution was issued on the said judgment within twelve months from the time the same was ren-

dered, and that the said judgment lien remained in full force and effect until the said sale of said land under execution.

"(6.) Evidence to show that at the time defendant's judgment lien was fixed by the recording and indexing of the said abstract of its said judgment in Harris County, Texas, and at the time the said money was paid into the State Treasury, it had no notice, actual or constructive, of any claim of the said plaintiff to the said tract of land, or to the said money which had been paid into the State Treasury.

"(7.) Evidence to show that defendant did not have any notice at the time of the purchase of said tract of land at execution sale by it, as aforesaid, of any claim of the said plaintiff to said tract of land, or to the said money which had been paid into the State Treasury, such as that set up in plaintiff's original petition, or of any other interest of the said plaintiff therein.

"With this explanation, the Court of Civil Appeals for the Third District, acting by its Chief Justice, certifies to the Supreme Court for decision the following material question presented by this appeal:

"Did the court below err in excluding the testimony referred to in the seventh paragraph of the foregoing statement? In other words, if the title to the 400.9 acres of land sought to be obtained by John W. Maxcy's application to purchase, appeared by the record to be in said Maxcy at the time appellant fixed its judgment upon said land, and if appellant had no notice at that time of the rights of appellee, did it, by virtue of said lien and the subsequent execution sale of the land, acquire title to the $801.80 purchase money paid to the State for the land, superior to the title and claim of appellee? And if it had no notice of appellee's rights at the time it fixed its judgment lien upon the land, would notice subsequently given and before the sale was made, affect appellant's rights?"

It is the well settled law of this State that the purchaser at a sale of land under execution, to which the defendant in execution holds the legal title, in trust, however, for another, acquires no title, provided that at the time of his purchase he has notice of the trust; and the rule is not varied although the judgment creditor may, without notice of the equity, have fixed a lien upon the land in any of the modes provided by statute. Blankenship v. Douglas, 26 Texas, 225; Grace v. Wade, 45 Texas, 522; Frazer v. Thatcher, 49 Texas, 26; Senter v. Lambeth, 59 Texas, 259; Parker v. Coop, 60 Texas, 111; McKamey v. Thorp, 61 Texas, 648. We presume, however, that this question was certified by reason of the fact that before the appellant acquired its lien by recording an abstract of its judgment, Maxcy, the trustee, had conveyed the land to the appellee by a deed which was not filed for record and of which the appellant had no notice. Upon the question as presented, the decisions of this court seem to be in conflict. In Blankenship v. Douglas, above cited, the trustee, as in this case, had conveyed the land by deed to the cestui que trust before the lien was acquired. The deed was not recorded, and while there was evidence tending to show that the

judgment creditor had constructive notice of the claim of the cestui que trust when the judgment was rendered and the execution was levied, the fact was not indisputably proved. It was distinctly held, however, that, even if the judgment creditor had no notice and the cestui que trust could claim nothing under his deed, the latter could assert his equity against the purchaser at execution sale. On the other hand, Calvert v. Roche, 59 Texas, 463, seems to hold the contrary doctrine. The ground of the opinion appears to be that, since the deed conveyed the legal title to the cestui que trust, his equity was extinguished, and that therefore he could claim neither under the deed nor under his original right. The determination of the point was hardly necessary to a decision of the case, and the question seems not to have received any very serious consideration. This appears by the fact, that while Blankenship v. Douglas is cited in support of another proposition in the opinion, the ruling in that case upon the point under consideration seems to have escaped attention. In Gaines v. Bank, 64 Texas, 18, the doctrine seemingly announced in Calvert v. Roche is apparently recognized, but the point was not there decided. We are of opinion that Blankenship v. Douglas lays down the just and logical rule. The statute makes an unrecorded deed void as against such creditors as establish a lien by judicial procedure against the property of the grantor without actual or constructive notice of the grantee's right. A deed that is void as between two parties can not be held effective as between them for any purpose. If void, it is as if it did not exist. The creditor can not in the one breath claim that it passed no title to the grantee as to him; and in the next, when the grantee asserts an equity existing before the deed, maintain that the equity was extinguished by the void conveyance.

We are therefore of the opinion that, even if the land had been vacant and the sale by the State valid, the appellant would have acquired no title by its purchase. And, on the other hand, we also think that if Maxcy had made the attempted purchase in his own right and had paid his own money, the appellant would have acquired no title either legal or equitable to the fund by its sale and purchase of the land under execution.

We answer the question in the negative.