**UNITED STATES of America (INTERNAL REVENUE SERVICE), Appellant,**

v.

**Milton I. FAGIN, Appellee.**

**Nos. SA–99–CA–1030–OG, SA–99–CA–1031–OG.**

United States District Court, W.D. Texas, San Antonio Division.

May 4, 2000.

G. Hobart Miller, Department of Justice, Dallas, TX, for United States of America, Internal Revenue Service, Appellant.

Milton I. Fagin, San Antonio, TX, Milton I. Fagin, Appellee, Pro se.

## OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT

ORLANDO L. GARCIA, District Judge.

Milton I. Fagin ("Fagin") is the debtor in this Chapter 13 proceeding. The United States Internal Revenue Service filed a proof of claim based on tax liens it had filed against Fagin's homestead. The IRS listed a portion of its claim as secured. Fagin objected to the claim, arguing that his parents' lien against his homestead is superior to the IRS's, and that after his parents' lien is taken into consideration, no equity remains to secure the IRS's lien. Samuel B. Fagin and Freda B. Fagin ("Samuel and Freda") are Fagin's parents. Mellon Mortgage Company holds the senior lien on Fagin's house. The issue in this appeal is who stands next in line, Samuel and Freda or the IRS. The bankruptcy court found that Samuel and Freda's liens are superior to those of the IRS. For the reasons set forth, this Court will affirm that ruling.

In 1980, Fagin purchased his home from Robert L. Wood Jr. and Cynthia S. Wood by assuming the existing 1977 first lien obligation. Samuel and Freda loaned Fagin $11,000 to pay a portion of the down payment. Fagin was to repay Samuel and Freda in June, 2000, and they were to have a lien to secure the loan. The agreement was memorialized contemporaneously but was not then recorded. In 1990, Samuel and Freda loaned Fagin $6,482.60, which they paid directly to Mellon's predecessor to cure Fagin's delinquency. In 1991, Samuel and Freda loaned Fagin $5,278.96, which they paid directly to the Woods, who had previously cured Fagin's delinquency for that amount on the first lien obligation and were foreclosing their deed of trust. All three loans bore interest at the rate of 8.5%. On the same day the third loan was made, Fagin executed a note and deed of trust in favor of Samuel and Freda in the amount of all three loans. The note and deed of trust were recorded on October 1, 1991. In 1992 and 1997, the IRS filed of record its federal tax lien notices against Fagin's homestead for unpaid taxes.

Fagin filed this Chapter 13 proceeding in 1998. The IRS filed an adversary complaint (Adversary Number 98–5095 K) to determine the validity of Samuel and Freda's lien. The bankruptcy judge

ruled that Samuel and Freda have a valid lien, and he reclassified the IRS's claim as general unsecured. The United States appeals. Because only questions of law are involved in this appeal, the bankruptcy court's judgment is subject to de novo review. *Bradley v. Pacific Southwest Bank (In re Bradley)*, 960 F.2d 502, 507 (5th Cir.1992), *cert. denied sub nom., Commonwealth Land Title Ins. Co. v. Bradley*, 507 U.S. 971, 113 S.Ct. 1412, 122 L.Ed.2d 783 (1993).

 In Texas, when real-estate purchase money is advanced under an oral agreement that the purchaser will execute a mortgage or give a lien as security, the agreement is enforceable in equity as a mortgage. *Woods v. West*, 37 S.W.2d 129, 132 (Tex. Comm'n App.1931, holding approved); *Floyd v. Hammond*, 268 S.W. 146, 147 (Tex. Comm'n App.1925, judgm't adopted); *Martin v. Ford*, 853 S.W.2d 680, 683 (Tex.App.—Texarkana 1993, writ denied); *Dillard v. Dillard*, 341 S.W.2d 668, 672 (Tex.Civ.App.—Austin 1960, writ ref'd n.r.e.). Therefore, Samuel and Frieda's 1980 loan is secured by an equitable lien on Fagin's homestead.

 The United States argues that even though Samuel and Freda acquired an equitable lien in 1980, it is not enforceable against the IRS because a conveyance of a real property interest must be recorded to be enforceable against a third-party creditor or a third-party purchaser. TEX.PROP. CODE ANN. § 13.001(a). The recording statute does not apply. Because Samuel and Freda's equitable lien arises by operation of law and does not depend on the execution of a deed, the lien is not subject to recording. *Gaona v. Gonzales*, 997 S.W.2d 784, 787 (Tex.App.–Austin 1999, no writ); *Park Central Bank v. JHJ Invs. Co.*, 835 S.W.2d 813, 814 (Tex.App.—Fort Worth 1992, no writ). This is true not only between the debtor and the payer, but as to third parties who have no notice of the equitable lien. *Gaona*, 997 S.W.2d at 787; *JHJ Invs.* 835 S.W.2d at 815; *Texas American Bank/Levelland v. Resen-*

*dez*, 706 S.W.2d 343, 347 (Tex.App.—Amarillo 1986, no writ).

 The United States argues that Samuel and Freda's loans to Fagin were fraudulent transfers. The Court does not agree. Before a transfer can be fraudulent, the Texas Uniform Fraudulent Transfer Act first requires that there be a transfer of an interest, such as a security interest. TEX.BUS. & COM.CODE § 24.006(b). The only transfer occurred in 1980, when Fagin purchased the property and Samuel and Freda's equitable lien was perfected. This was long before the IRS perfected its tax liens. The 1991 deed of trust was not a transfer, but a recordation of the 1980 lien.

 Further, the 1990 and 1991 liens were not transfers since Samuel and Freda were, as a matter of law, subrogated to the rights of the first lienholder in the preexisting lien. Samuel and Freda paid the 1990 and 1991 loans directly to the first lienholder and to the Woods, who had cured Fagin's default as to the first lienholder. The 1990 and 1991 loans were therefore secured and perfected by the first lien in 1977, which Fagin had assumed at the time of his 1980 purchase. "In Texas, any person who pays the debt of another to protect her own interest in the property is entitled to subrogate to the rights of the creditor whose claim was paid." *Dietrich Industries v. United States*, 988 F.2d 568, 571 (5th Cir.1993). In *Dietrich Indus.*, the IRS had properly recorded tax liens on property subject to a superior deed of trust. When Dietrich subsequently purchased the property from the original owner, it paid the owner proceeds from the sale in consideration for release of the lien. The Fifth Circuit held that Dietrich was subrogated to the lien released in exchange for the sale proceeds, and it thus obtained priority over the subsequent federal tax liens. *Id.* at 572. If Dietrich were denied subrogation, the court wrote, the IRS would have "an unearned windfall" because "it would elevate

the government's lien for no good reason." *Id.* at 573. The court pointed out Dietrich's subrogation did not extinguish the tax liens. *Id.* This is because equitable subrogation does not create a new lien, "but preserve[s] the existing lien and prescribe[s] new terms and conditions for foreclosure." *Providence Inst. for Sav. v. Sims,* 441 S.W.2d 516, 520 (Tex.1969). The IRS is not prejudiced by Samuel and Freda's subrogation; it remains subordinate to the first mortgage lien, and Samuel and Freda are merely substituted for Mellon to the extent of their payments. *Id.* at 520–21; *Dietrich Indus.,* 988 F.2d at 573.

█ Even if Samuel and Freda had constructive knowledge of Fagin's presumed insolvency when they made the 1990 and 1991 loans, as the United States contends, Texas law does not preclude their assertion of equitable subrogation. *Dietrich Indus.,* 988 F.2d 568, 572 (5th Cir.1993).

The United States cites *Browning Interests v. Allison (Matter of Holloway* ), 955 F.2d 1008 (5th Cir.1992) for the proposition that a transfer is deemed to have been made when it was filed of record. *Id.* at 1010. According to the IRS, that occurred in 1991 when Fagin recorded the deed of trust. The deed of trust is superfluous, however, since recording is not required to enforce the equitable lien. Further, the primary issue in *Holloway* was whether an ex-wife of a debtor who loaned him money after their divorce was an "insider" for purposes of the fraudulent transfer act. *Id.* at 1010–14. *Holloway* is not applicable because the loans made to the debtor by his ex-wife were not secured by equitable liens, nor were they subrogated to prior liens.

The ruling of the bankruptcy court that Samuel B. Fagin and Freda B. Fagin's liens on Milton I. Fagin's home are valid liens and superior to any liens held by the IRS is AFFIRMED.